UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| WONG HAPING and HE XIANGHONG, individually and on behalf of all others similarly situated, | : : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | 22-cv-9843 (LAK) (SDA) |
| v. | : | |
| | : | **Oral Argument Requested** |
| 17 EDUCATION & TECHNOLOGY GROUP INC., ANDY CHANG LIU, MICHAEL CHAO DU, DUN XIAO, TUCK LYE KOH, QIN WEN, JIAWEI GAN, BING YUAN, COLLEEN A. DE VRIES, COGENCY GLOBAL INC., MORGAN STANLEY & CO. LLC, GOLDMAN SACHS (ASIA) L.L.C., BOFA SECURITIES, INC., CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, and TIGER BROKERS (NZ) LIMITED, | : : : : : : : : : : : | |
| | : | |
| Defendants. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF THE MOTION TO DISMISS
<u>THE FIRST AMENDED CLASS ACTION COMPLAINT</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 2

I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED .................................................. 2

II.   PLAINTIFFS FAIL TO ALLEGE ANY MISREPRESENTATION OR OMISSION ....... 4

      A.    Plaintiffs Allege No False or Misleading Statement .................................. 4

            1.    The Company's Risk Disclosures Were Not Misleading ........................... 4

            2.    The Company's Statements About Its Existing Customer  Base and
                  Bespoke Services Were Not Misleading ..................................................... 6

            3.    The Company's Statements About Growth Were Not Misleading ............. 7

      B.    Plaintiffs Allege No Omission Under Item 303 ......................................... 8

III.  PLAINTIFFS' CLAIMS FAIL DUE TO LACK OF LOSS CAUSATION ...................... 9

IV.   PLAINTIFFS LACK STANDING FOR THE S-8 REGISTRATION STATEMENT ....... 9

CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Banerjee v. Zhangmen Education Inc.*,
 No. 21-CV-9634 (JPO), 2023 WL 2711279 (S.D.N.Y. Mar. 30, 2023)......................5, 6, 8

*Barilli v. Sky Solar Holdings, Ltd.*,
 389 F. Supp. 3d 232 (S.D.N.Y. 2019)...............................................................................3

*Bettis v. Aixtron SE*,
 No. 16 Civ. 00025 (CM), 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016)...........................3

*In re CarLotz, Inc. Securities Litigation*,
 No. 21-cv-5906 (RA), 2023 WL 2744064 (S.D.N.Y. Mar. 31, 2023)...............................10

*City of Riviera Beach General Employees Retirement System v. Macquarie Infrastructure
 Corp.*,
 No. 18-CV-3608 (VSB), 2021 WL 4084572 (S.D.N.Y. Sept. 7, 2021),
 *vacated and remanded sub nom. Moab Partners, L.P. v. Macquarie Infrastructure
 Corp.*, No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022),
 *petition for cert. docketed*, No. 22-1165 (U.S. June 1, 2023)............................................9

*Cross v. 21st Century Holding Co.*,
 No. 00 Civ. 4333 MBM, 2001 WL 34808272 (S.D.N.Y. Aug. 6, 2001) ...........................2

*DeMaria v. Andersen*,
 318 F.3d 170 (2d Cir. 2003)..............................................................................................10

*In re Facebook, Inc. IPO Securities & Derivative Litigation*,
 986 F. Supp. 2d 487 (S.D.N.Y. 2013)................................................................................4

*Garnett v. RLX Technology Inc.*,
 No. 21 Civ. 5125 (PAE), 2022 WL 4632323 (S.D.N.Y. Sept. 30, 2022)....................3, 5, 6

*In re Greenlane Holdings, Inc. Securities Litigation*,
 511 F. Supp. 3d 1283 (S.D. Fla. 2021) ........................................................................5, 6

*In re Henry Schein, Inc. Securities Litigation*,
 No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019).........................7

*Levine v. AtriCure, Inc.*,
 508 F. Supp. 2d 268 (S.D.N.Y. 2007).................................................................................9

*Livingston v. Cablevision Systems Corp.*,
 966 F. Supp. 2d 208 (E.D.N.Y. 2013) ...............................................................................7

*Lorenzo v. BlueCity Holdings Ltd.*,
    76 Misc. 3d 1226(A), 2022 N.Y. Slip Op. 51055(U) (Sup. Ct. N.Y. Cnty. 2022) ..............6

*Merryman v. Citigroup, Inc.*,
    No. 15 Civ. 9185 (CM), 2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018)...........................10

*Monroe County Employees' Retirement System v. YPF Sociedad Anonima*,
    15 F. Supp. 3d 336 (S.D.N.Y. 2014).........................................................................2

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
    693 F.3d 145 (2d Cir. 2012)..................................................................................10

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
    709 F.3d 109 (2d Cir. 2013)....................................................................................3

*In re NovaGold Resources Inc. Securities Litigation*,
    629 F. Supp. 2d 272 (S.D.N.Y. 2009).....................................................................3

*In re Qudian Inc. Securities Litigation*,
    No. 17-CV-9741 (JMF), 2019 WL 4735376 (S.D.N.Y. Sept. 27, 2019) ...........................3

*Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago v. Bank of New York Mellon*,
    775 F.3d 154 (2d Cir. 2014)...................................................................................10

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)....................................................................................8

*Sandoz v. Waterdrop Inc.*,
    No. 21cv7683 (DLC), 2023 WL 1767526 (S.D.N.Y. Feb. 3, 2023),
    *appeal docketed*, No. 23-301 (2d Cir. Mar. 7, 2023)..................................................6

*SEC v. Bank of America Corp.*,
    677 F. Supp. 2d 717 (S.D.N.Y. 2010).....................................................................4

*Slack Technologies, LLC v. Pirani*,
    143 S. Ct. 1433 (2023).........................................................................................10

*Wandel v. Gao*,
    590 F. Supp. 3d 630 (S.D.N.Y. 2022).....................................................................4

*Wang v. Cloopen Group Holding Ltd.*,
    No. 21-cv-10610 (JGK), 2023 WL 2534599 (S.D.N.Y. Mar. 16, 2023)...........................7

*In re Weight Watchers International, Inc. Securities Litigation*,
    No. 14-cv-1997 (LAK), 2016 WL 2757760 (S.D.N.Y. May 11, 2016) ...........................7

iii

# OTHER AUTHORITIES

Management's Discussion and Analysis of Financial Condition and Results of
    Operations; Certain Investment Company Disclosures, Securities Act Release No.
    6835, Exchange Act Release No. 26831, Investment Company Act Release No.
    16961, 54 Fed. Reg. 22,427 (May 24, 1989) ........................................................................9

Defendants respectfully submit this Reply Memorandum of Law in further support of their Motion to Dismiss the First Amended Class Action Complaint.[1]

## **PRELIMINARY STATEMENT**

The Opposition (ECF No. 66) concedes that 17 Education could not have predicted the July 2021 Ban that effectively outlawed the entire for-profit after-school tutoring industry, and Plaintiffs disavow this as the basis of their claims. Plaintiffs instead emphasize that their claims are based on a purported failure to disclose regulators' public statements made well more than a year before this Action was filed. This confirms that Plaintiffs' claims are untimely.

In any event, this theory also fails to state a claim under the Securities Act. Plaintiffs insist that the Company should have noted in its offering documents that (i) certain government officials publicly indicated that they wanted to impose some unspecified new regulations, and (ii) these unknown potential future regulations would have a material adverse impact on its business. Yet, the Company expressly warned that the regulatory regime was evolving and that future regulations could materially impact its business. Without a specific proposal from the government—and there undisputedly was none—the Company could not have known (or disclosed) what the hypothetical impact would be. Nothing in the two challenged Registration Statements was retroactively rendered false or misleading because regulators later issued an unprecedented ban that wiped out the whole industry.

Finally, the Opposition all but admits that Plaintiffs lack standing to assert claims based on the S-8 Registration Statement. Plaintiffs concede that they did not purchase any shares traceable to the S-8 Registration Statement and indeed fail to allege that ***anyone*** did.

---

[1]    Capitalized terms have the meanings ascribed to them in the Opening Brief (ECF No. 63). All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

**ARGUMENT**

## I.    PLAINTIFFS' CLAIMS ARE TIME-BARRED

The Opposition confirms that Plaintiffs' claims are premised on an alleged failure to disclose that "stricter"—albeit unknown—reforms "were on the horizon," based on public statements the MOE indisputably made considerably more than a year before this action was filed.  (Opp. 30.)  This conclusively demonstrates Plaintiffs' claims are time-barred.  *See Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 348, 351-353 (S.D.N.Y. 2014) (dismissing § 11 claim where "the facts needed for determination of when a reasonable investor" would have discovered alleged omissions could "be gleaned from the complaint").[2]

The Opposition argues the regulators' remarks were too "sporadic" to put Plaintiffs on notice of their claims, thereby not triggering the statute of limitations.  (Opp. 29.)  But that cannot be squared with Plaintiffs' insistence that regulators issued a "steady drumbeat of repeated statements" (*id.* 2), a "barrage of consistent directives" (*id.* 8), a "steady stream of repeated announcements" (*id.*), "repeated[] confirm[ations]" of "bringing after-school tutoring under the control of public schools" (*id.* 18), and "repeated[] confirm[ations]" of "issu[ing] new reforms in 2021 to further restrict the activities of after-school tutoring businesses" (*id.* 21).  If, as Plaintiffs allege, 17 Education should have concluded that devasting new regulation was imminent, then Plaintiffs should have done the same based on the same public statements.

Contrary to the Opposition's suggestion, there was no "information asymmetry" here. (Opp. 30.)  Plaintiffs identify no nonpublic information uniquely in the Company's possession. While Plaintiffs speculate that 17 Education theoretically could have secretly "secured an

---

[2]    Contrary to Plaintiffs' suggestion (Opp. 31), this defense is not premature.  *See Cross v. 21st Century Holding Co.*, No. 00 Civ. 4333 MBM, 2001 WL 34808272, at *4 (S.D.N.Y. Aug. 6, 2001) (standard for when a reasonable investor would have discovered the facts underlying a § 11 claim "is an objective one" and may be resolved "as a matter of law" (quoting *Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993))).

exemption" from new regulations, they do not allege that happened.  (*Id.*)  The public commentary implying that "stricter reforms were on the horizon" (*id.*) was "equally available to the Defendants and investors alike."  *Bettis v. Aixtron SE*, No. 16 Civ. 00025 (CM), 2016 WL 7468194, at *12 (S.D.N.Y. Dec. 20, 2016).  Indeed, the specter of increasing regulation was also widely covered in major U.S. news publications, including Bloomberg, Reuters, The Wall Street Journal and The Economist.  (Br. 20-21; Exs. O-R.)  Plaintiffs expressly argue that the market reacted to such reports more than a year before they filed suit.  (Opp. 32 (arguing the ADS price "tumble[d] thereafter as new details about the potential shape of the new reforms were reported").)  *See In re NovaGold Res. Inc. Sec. Litig.*, 629 F. Supp. 2d 272, 289 (S.D.N.Y. 2009) ("stock price drop following [a] press release" more than a year before filing action supports finding of untimeliness).  Contrary to Plaintiffs' suggestion, courts routinely hold that public commentary and media coverage is within the total mix of information available to investors. *See, e.g.*, *Garnett v. RLX Tech. Inc.*, No. 21 Civ. 5125 (PAE), 2022 WL 4632323, at *23 (S.D.N.Y. Sept. 30, 2022) ("[s]tatements by Chinese government authorities regarding their regulatory aspirations" were part of "the mix of public information"); *Barilli v. Sky Solar Holdings, Ltd.*, 389 F. Supp. 3d 232, 254-55 (S.D.N.Y. 2019) (failure to disclose regulatory actions in Japanese solar market inactionable because, inter alia, information was available in Asian publications); *In re Qudian Inc. Sec. Litig.*, No. 17-cv-9741 (JMF), 2019 WL 4735376, at *6 (S.D.N.Y. Sept. 27, 2019) (alleged misstatements immaterial where relevant facts were published in Chinese news articles predating IPO).[3]

---

[3]   *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*, 709 F.3d 109 (2d Cir. 2013) (cited at Opp. 29), did not even address a statute of limitations argument, and unlike here, the allegedly omitted information—that the mortgage funding company "had abandoned its underwriting guidelines"—was uniquely in the company's possession and, therefore, not in the total mix of public information.  *Id.* at 127.

3

Plaintiffs also cannot justify their delay by pointing to the IPO Registration Statement's caution against relying on third-party information about the Company.  (Opp. 29-30.)  Investors were not "expressly told in the IPO Registration Statement *not* to consider any of the pre-IPO commentary."  (Opp. 30.)  The IPO Registration Statement merely warned that investors "should rely only on the information contained in this prospectus or in any free writing prospectus that we authorize to be distributed to you."  (AC ¶ 71.)  This statement was with respect to information about the Company; it does not direct investors to turn a blind eye to every other outside force potentially affecting the industry.  *See Wandel v. Gao*, 590 F. Supp. 3d 630, 642-43 (S.D.N.Y. 2022) (no actionable omission of public information about COVID-19, pre-pandemic in mid-January 2020, despite offering documents' instruction to rely only on information within them).[4]  To the contrary, the IPO Registration Statement expressly told investors to consider regulatory developments.  (Ex. B, IPO Registration Statement at 25-27.)  In any event, even setting aside *pre*-IPO activity, Plaintiffs' claims still would be time-barred based on the *post*-IPO activity alone, as that too was more than a year before this Action.  (*See* Br. 15-16, 19-21.)

Finally, Plaintiffs suggest their claims are timely because they were brought within one year of the July 2021 Ban.  (Opp. 29.)  That is irrelevant, because Plaintiffs concededly "do ***not*** allege that 17 Education should have 'predicted' the July 2021 Ban."  (*Id.* 30 (emphasis added).)

II.    **PLAINTIFFS FAIL TO ALLEGE ANY MISREPRESENTATION OR OMISSION**

A.    **Plaintiffs Allege No False or Misleading Statement**

1.    **The Company's Risk Disclosures Were Not Misleading**

The Registration Statements contained lengthy risk disclosures cautioning, among many

---

[4]    Plaintiffs' cases involve omissions about the *company*, not external factors.  *See, e.g.*, *SEC v. Bank of Am. Corp.*, 677 F. Supp. 2d 717, 719 (S.D.N.Y. 2010); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 521-22 (S.D.N.Y. 2013).

other things, that the regulatory regime was "relatively new and evolving" and that there were "[u]ncertainties . . . in relation to new legislation or proposed changes in the PRC regulatory requirements . . . which may materially and adversely affect [17 Education's] business." (AC ¶¶ 108-09, 122-23; *see* Br. 26-28.) These warnings "would not have left any reasonable investor with the impression that, as to enhanced regulation . . . in China, the future was settled, or unattended by contingency." *RLX*, 2022 WL 4632323, at *18.

Still, Plaintiffs complain that the warnings are framed in "hypothetical" terms. (Opp. 21.) But it is undisputed that no new regulations had been issued (or even proposed) at the time of the Registration Statements. Thus, the risk of increased regulation *was* only hypothetical. The Opposition concedes that the securities laws do not require clairvoyance and that "companies subject to government regulation cannot be expected to predict 'coming regulation or its potential effect.'" (Opp. 23 (quoting *Kwalbrun v. Glenayre Techs., Inc.*, No. 99-7125, 1999 WL 1212491, at *2 (2d Cir. Dec. 16, 1999)).) "[W]here the level of risk is unknown and the existence of a risk is disclosed . . . disclosure is [not] misleading merely because it did not state that the risk was 'serious.'" *In re Greenlane Holdings, Inc. Sec. Litig.*, 511 F. Supp. 3d 1283, 1311 (S.D. Fla. 2021). Plaintiffs attempt to distinguish the recent on-point decision dismissing *Banerjee v. Zhangmen Education Inc.*, No. 21-CV-9634 (JPO), 2023 WL 2711279 (S.D.N.Y. Mar. 30, 2023)—which involved another Chinese tutoring company that went public around the same time—by arguing that the claims there "left unclear the timing and form of [the proposed] regulations." (Opp. 23.) But the court in *Zhangmen* deemed the complaint deficient for the same reason the claims fail here: they plead no facts showing that the ultimate regulatory ban

5

was "inevitable" at the time of the IPO and that the issuer knew the ban's "timing and form." *Zhangmen*, 2023 WL 2711279, at *10.[5]

Plaintiffs argue that a "reasonable investor would fairly read the disclosure that PRC authorities 'could' issue stricter regulations to mean that it [sic] was **not** actively preparing to do so." (Opp. 23.) Such an interpretation is not only unreasonable but directly contrary to the express language of the disclosure. At most, Plaintiffs allege that government officials indicated they would issue some, unidentified regulations and bolster the availability of public after-school programs. (*Id.* 18.) As to the latter, the stated goals were simply to "support" public schools in carrying out their own tutoring programs (AC ¶ 53) or to "increas[e]" or "improve" that programing (*id.* ¶¶ 58, 62). In other words, public after-school programs were nothing new— and still the private tutoring industry was "booming." (*Id.* ¶ 4.) The "death knell" to the private industry was the July 2021 Ban (*id.* ¶ 91), yet Plaintiffs do not allege this had even been suggested before the Registration Statements.

### 2.    The Company's Statements About Its Existing Customer Base and Bespoke Services Were Not Misleading

17 Education's statements regarding (i) its large pool of prospective customers and (ii) the Company's course offerings "cater[ing] to students' learning needs" are inactionable puffery and statements of opinion and, in any event, were not misleading. (Opp. 25; AC ¶¶ 102-05, 116-

---

[5]    Plaintiffs likewise try to distinguish at Opp. 23: (1) *Greenlane*, 511 F. Supp. 3d 1283, as "premised on proposed *ordinances*" that were uncertain; here, however, the regulations had not even been proposed at the time of the Offerings; (2) *RLX*, 2022 WL 4632323, where the authorities "merely 'describ[ed], in broad terms, ideas then under consideration' without announcing any 'firm intention' to proceed in any specific manner"; here, Plaintiffs also fail to plead a *specific* manner in which the government planned to proceed pre-IPO; (3) *Sandoz v. Waterdrop Inc.*, No. 21cv7683 (DLC), 2023 WL 1767526 (S.D.N.Y. Feb. 3, 2023), *appeal docketed*, No. 23-301 (2d Cir. Mar. 7, 2023), where the defendant "expressly disclosed risk of future regulatory investigations"; the plaintiffs there, however, unsuccessfully complained that the risk disclosures were not specific enough, as Plaintiffs allege here; and (4) *Lorenzo v. BlueCity Holdings Ltd.*, 76 Misc. 3d 1226(A), 2022 N.Y. Slip Op. 51055(U) (Sup. Ct. N.Y. Cnty. 2022), where the plaintiffs "fail[ed] to allege . . . what specifically was known at the time of the IPO"; here, Plaintiffs here similarly fail to allege what Defendants knew at the time of the IPO about the potential future regulations.

19.)  Both statements are unquantifiable and incapable of objective verification.  This is classic puffery.  *See Livingston v. Cablevision Sys. Corp.*, 966 F. Supp. 2d 208, 220 (E.D.N.Y. 2013) (company's statements that it could "'continue to provide superior products . . . and continue to grow'" were "quintessential inactionable puffery").[6]  Regardless, Plaintiffs effectively concede that the Company did have a large pool of prospective customers at the time of the IPO.  (*See, e.g.*, AC ¶ 4 (business was "booming"); ¶ 2 (demand "skyrocketed" leading up to the IPO).)  The Company's resounding—and undisputed—success provides a reasonable basis for its opinion that its courses catered to students' needs.  Contrary to Plaintiffs' characterization (Opp. 25), 17 Education was entitled to opine about the strength of its course offerings, and Plaintiffs plead no concrete regulatory proposals at the time of the Registration Statements that would have prevented 17 Education from continuing to meet students' needs.  *See In re Weight Watchers Int'l, Inc. Sec. Litig.*, No. 14-cv-1997 (LAK), 2016 WL 2757760, at \*5 (S.D.N.Y. May 11, 2016) (Kaplan, J.) (plaintiff "cannot state a claim by alleging only that the opinion was wrong").[7]

### 3.   The Company's Statements About Growth Were Not Misleading

Lastly, 17 Education's statements that the after-school tutoring industry had grown rapidly and that the Company hoped to "further grow" its tutoring business (*see* Opp. 26) did not retroactively become misleading simply because regulators later wiped out the industry. Plaintiffs admit the industry experienced "rapid growth" prior to the IPO.  (AC ¶ 38.)  Still, they contend that the Company was not "entitled . . . to be optimistic about its future" in the face of

---

[6]   By contrast, in *Wang v. Cloopen Group Holding Ltd.*, No. 21-cv-10610 (JGK), 2023 WL 2534599 (S.D.N.Y. Mar. 16, 2023), describing the company's customers as "loyal" was actionably misleading because net customer retention had dropped 30% **before the IPO**.  *Id.* at \*9.  Here, Plaintiffs allege no pre-IPO decline in 17 Education's customer base.  Also inapposite is *In re Henry Schein, Inc. Securities Litigation*, No. 18-CV-01428 (MKB), 2019 WL 8638851 (E.D.N.Y. Sept. 27, 2019), where a company allegedly engaging in undisclosed anti-competitive behavior made far more specific statements, *see id.* at \*15-16, than 17 Education's reference to its effectiveness.

[7]   Plaintiffs concede they "do not take issue with the characterization of customer relationships."  (Opp. 25.)

unknown potential future regulation. (Opp. 26 n.4.) But public companies "are not required to take a gloomy, fearful or defeatist view of the future" and can "be confident about their stewardship and the prospects of the business." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). As of the IPO, the industry was—in Plaintiffs' words—"massive," and 17 Education was "the clear market leader." (AC ¶¶ 35, 40.) Plaintiffs allege no facts that would have given the Company any reason to think that "improv[ing]" public after-school programs (with which 17 Education already competed) would destroy its business. (AC ¶ 58.) And the Opposition does not even contend that the Company did not sincerely believe that it would continue to grow.

Further, statements about future growth and projections are quintessential forward-looking statements, protected by the bespeaks caution doctrine. Plaintiffs ignore the Registration Statements' robust and meaningful risk disclosures. (Opp. 28; *see* Br. 23-24.) Even if 17 Education "was so optimistic about its market in China or its own income streams as to cause a reasonable investor to overlook the chance of a crackdown," 17 Education "adequately bespoke caution with respect to this risk in clear, prominent, and definitive language, and it is the risk that materialized." *Zhangmen*, 2023 WL 2711279, at *9.

### B.    Plaintiffs Allege No Omission Under Item 303

The Registration Statements complied with Item 303 by disclosing the known trends and regulatory uncertainties, including that the Chinese government could impose new regulations that could have a material impact on the Company. (Br. 5-6.) Plaintiffs do not allege any facts supporting a plausible inference that any Defendant knew the reforms PRC regulators had "determined" to make at the time of the Offerings. (*See* Opp. 1-2.)

In any event, Plaintiffs do not allege that anyone at 17 Education expected any hypothetical future regulations to have a material impact on its business, as required by Item 303. As Plaintiffs point out, the government had repeatedly tightened regulations in the past, yet the

8

industry continued to thrive.  To the extent Plaintiffs contend that the expansion of public after-school programs was a specific proposed reform, they fail to allege that 17 Education expected this to have a material impact either.  It is undisputed that the reform that ultimately had a material impact on the Company—the July 2021 Ban—was not known at the time of the Registration Statements.[8]

## III.   PLAINTIFFS' CLAIMS FAIL DUE TO LACK OF LOSS CAUSATION

The Opposition concedes that "17 Education cannot be responsible for the 'drop in its stock price . . . prior to any alleged corrective disclosures.'"  (Opp. 32 (quoting Br. 33).)  Plaintiffs' own case acknowledges that dismissal at the pleading stage is warranted if negative causation is apparent on the face of the complaint, as it is here.  *See Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 273 & n.4 (S.D.N.Y. 2007).  (Opp. 31-32.)  It is undisputed that it was the July 2021 Ban that caused 17 Education's ADS price to crash.  (Opp. 30-31.)  But that was neither a corrective disclosure of any prior misrepresentation nor the materialization of a ***concealed*** risk.

## IV.   PLAINTIFFS LACK STANDING FOR THE S-8 REGISTRATION STATEMENT

The Opposition argues that Defendants "confuse[]" statutory standing and class standing, but Plaintiffs lack ***both*** for their claims regarding the S-8 Registration Statement.  (Opp. 33-34.)  As to statutory standing, the Supreme Court recently confirmed that, even in the context of putative class actions, to have standing for "a claim under § 11, the securities held by the

---

[8]   Plaintiffs' suggestion that the mere prospect of new regulation, absent substantive detail, was enough for 17 Education to know that it was "reasonably likely" that the Company's operations would be materially affected (Opp. 17-19), does not square with their own authority.  The SEC's 1989 Guidance notes that the regulatory proposals were known to "require the expenditure by the Company of approximately $30 million." Management's Discussion and Analysis of Financial Condition and Results of Operations, Securities Act Release No. 6835, Exchange Act Release No. 26831, Investment Company Act Release No. 16961, 54 Fed. Reg. 22,427, 22,430 (May 24, 1989).  And *Moab Partners, L.P. v. Macquarie Infrastructure Corp.* involved a regulation that had been proposed nearly eight years before the offering at issue, giving the defendants ample time to consider its specific details and likely effects on the company.  *City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, No. 18-CV-3608 (VSB), 2021 WL 4084572, at *2 (S.D.N.Y. Sept. 7, 2021), *vacated and remanded sub nom. Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, No. 21-2524, 2022 WL 17815767 (2d Cir. Dec. 20, 2022), *petition for cert. docketed*, No. 22-1165 (U.S. June 1, 2023).

9

plaintiff must be traceable to *the particular registration statement* alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 143 S. Ct. 1433, 1440-41 (2023). Plaintiffs do not claim to have purchased any ADS pursuant or traceable to the S-8 Registration Statement. (AC ¶¶ 17, 19, 70, 81.) Indeed, Plaintiffs fail to allege that *any* ADS were issued pursuant or traceable to the S-8 Registration Statement. *See DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003) (no standing where plaintiff does not allege shares were "issued under *that* registration statement and not another"). Thus, in contrast to *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012), where it was undisputed that *some* putative class members had purchased securities traceable to each challenged offering, *see id.* at 163, here Plaintiffs fail to allege facts showing that *anyone* purchased ADS traceable to the S-8 Registration Statement. *Cf. In re CarLotz, Inc. Sec. Litig.*, No. 21-cv-5906 (RA), 2023 WL 2744064, at *6 (S.D.N.Y. Mar. 31, 2023) ("[I]t is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class–that is, a named plaintiff must have purchased shares traceable to the challenged offering.").

Plaintiffs cannot skirt this issue by claiming that the S-8 Registration Statement implicates the "same set of concerns" as the IPO Registration Statement. (Opp. 34.) The claims involve distinct registration statements with "differing . . . securities underlying them" and alleged misstatements that relate to differing regulatory developments. *Merryman v. Citigroup, Inc.*, No. 15 Civ. 9185 (CM), 2018 WL 1621495, at *10 (S.D.N.Y. Mar. 22, 2018). (*See* Exs. B-D; AC ¶¶ 73-80.) Accordingly, the S-8 Registration Statement claims "could turn on very different proof" from the IPO claims. *Ret. Bd. of Policemen's Annuity & Benefit Fund of City of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 162 (2d Cir. 2014).

## CONCLUSION

The Amended Complaint should be dismissed in its entirety with prejudice.

10

Dated:  New York, New York
        July 14, 2023

Respectfully submitted,

/s/ Robert A. Fumerton
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone:   (212) 735-3000
Fax:       (212) 735-2000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendants 17 Education &
Technology Group Inc., Cogency Global Inc.,
and Colleen A. De Vries*